# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:     2020AP1186

†Petition for Review Filed

Complete Title of Case:

> **DOROTHY SHANNON, INDIVIDUALLY AND ON BEHALF OF A CLASS OF OTHERS SIMILARLY SITUATED,**
>
>   **†PLAINTIFF-RESPONDENT,**
>
>     **V.**
>
> **MAYO CLINIC HEALTH SYSTEM - NORTHWEST WISCONSIN REGION, INC.,**
>
>   **DEFENDANT-APPELLANT.**

---

| | |
|---|---|
| Opinion Filed: | June 2, 2021 |
| Submitted on Briefs: | January 5, 2021 |
| Oral Argument: | |

---

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

---

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Matthew J. Splitek* and *James E. Goldschmidt* of *Quarles & Brady LLP*, Madison and Milwaukee offices, respectively. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert J. Welcenbach* of *Welcenbach Law Offices, S.C.*, Milwaukee; *Scott Borison* of *Legg Law Firm LLC*, Baltimore, Maryland; *Jay Heit of Herrick and Hart, S.C.*, Eau Claire; and |

*John Craig Jones* of *Jones Hill Trial Lawyers*, South Oakdale, Louisiana.

COURT OF APPEALS
DECISION
DATED AND FILED

June 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1186**

Cir. Ct. No. **2019CV204**

STATE OF WISCONSIN

IN COURT OF APPEALS

---

DOROTHY SHANNON, INDIVIDUALLY AND ON BEHALF OF A CLASS OF OTHERS SIMILARLY SITUATED,

  PLAINTIFF-RESPONDENT,

 V.

MAYO CLINIC HEALTH SYSTEM - NORTHWEST WISCONSIN REGION, INC.,

  DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Dunn County: ROD W. SMELTZER, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1      SEIDL, J.   Dorothy Shannon alleges in this class action lawsuit that she was overcharged for the costs of obtaining medical records in 2013 by a nonprofit corporation, Mayo Clinic Health System—Red Cedar (hereinafter "Red

Cedar"), which merged into a separate nonprofit corporation, Mayo Clinic Health System—Northwest Wisconsin Region, Inc. (hereinafter "Northwest"), in 2018. Shannon moved to certify a class against Northwest, to which Northwest objected. The sole issue on appeal is whether, in order to accurately define the scope of the certified class, the class notice should have identified Red Cedar, rather than Northwest, as the entity whose alleged conduct triggered Shannon's claim.

¶2      Northwest argues the circuit court violated WIS. STAT. § 803.08(11) (2019-20),[1] by ordering that Northwest be named in the class notice because the class definition includes references to conduct by Northwest that are unsupported by any evidence.  In response, Shannon asserts that due to the entities' merger, the court did not err in refusing to name Red Cedar and, instead, naming Northwest in the notice.  Shannon further argues that Northwest should be judicially estopped from claiming it should not be included as the party whose conduct is at issue in the class definition because that position is inconsistent with the position Northwest took in earlier moving to dismiss Red Cedar from the lawsuit.

¶3      We conclude the class as certified incorrectly defines the members who may claim damages as a result of being charged for obtaining medical records by Red Cedar.  Accordingly, the circuit court erred in failing to amend the class definition.  We further conclude that Northwest is not judicially estopped from seeking to correctly define the class action members.  We therefore reverse that part of the court's class certification order, which defines the members as those persons who were charged for obtaining medical records by Northwest, and remand with directions to substitute Red Cedar for Northwest in the class definition.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

## BACKGROUND

¶4     In December 2013, Shannon's attorney made a request for certified medical records from Red Cedar.  Red Cedar responded to Shannon's records request with an invoice for forty-one dollars.  The invoice stated that checks should be made payable to Red Cedar.  Shannon's counsel thereafter paid the charge to Red Cedar.

¶5     On January 1, 2018, Red Cedar merged into Northwest.  By statute, Red Cedar ceased to exist at the time of the merger.  *See* WIS. STAT. § 181.1106(1).  As the surviving entity, however, Northwest succeeded to Red Cedar's liabilities as they existed prior to the merger.  *See* § 181.1106(3).

¶6     Shannon thereafter filed the instant lawsuit against Red Cedar and Northwest, asserting violation of WIS. STAT. § 146.83[2] and other causes of action on behalf of herself and a putative class.  The complaint identified Red Cedar and

---

[2] Under WIS. STAT. § 146.83(3f), the charges may be as follows:

> (b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
>
> 1. For paper copies:  $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.
>
> 2. For microfiche or microfilm copies, $1.50 per page.
>
> 3. For a print of an X-ray, $10 per image.
>
> 4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.
>
> 5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.
>
> 6. Actual shipping costs and any applicable taxes.

Northwest as separate parties. It also alleged Northwest was the "parent entity of other corporations" and of Red Cedar. The complaint was based on Shannon's counsel's December 2013 transaction with Red Cedar, and it named her as the class representative.

¶7 Based upon the earlier merger, Northwest moved to dismiss Red Cedar as a party, explaining that Red Cedar had merged into Northwest. Given the merger, Red Cedar no longer had the capacity to be sued, but Northwest acknowledged that it succeeded to any Red Cedar liabilities on Shannon's and the putative class's claims. The circuit court granted the motion and dismissed Red Cedar. The court denied a separate motion to dismiss Northwest, which remained in the case as Red Cedar's successor.

¶8 Shannon moved to certify the class action in which she defined the class as "[a]ll persons in Wisconsin … who were … patient[s] of any Mayo healthcare provider," who requested health care records "from Mayo," and were charged a fee "by MAYO" in violation of WIS. STAT. § 146.83(3f)(b)4.-5. from six years preceding "commencement of this action through the date of trial." Shannon's motion explicitly defined "Mayo" as Northwest.

¶9 Northwest did not oppose the class certification, but it did move to amend the class definition. As relevant here, Northwest argued that the class could not be certified without defining the class by reference to the entity that actually charged Shannon's counsel—Red Cedar. Northwest further explained: "This proposed clarification merely seeks to align any class definition with the facts of this case. Those facts involve charges by [Red Cedar], and no charges by [Northwest]." Northwest further warned: "If Shannon defines her class in terms of

persons charged by [Northwest], that class will not have *any* members—not even Shannon herself."

¶10 At the motion hearing, Shannon opposed this revision to the class certification because Red Cedar no longer existed, Northwest was the only remaining defendant, and if the definition was amended, Northwest would escape liability. However, Northwest expressly acknowledged that "if liability is based on [Red Cedar], the liability would go to [Northwest]." Northwest merely wanted clarification that it was Red Cedar's conduct and not Northwest's conduct that defined the scope of the class, given the facts alleged.

¶11 The circuit court agreed that the charges paid by Shannon's attorney "were Red Cedar charges." But, in the court's view, if Northwest had assumed liability for those charges, attributing the charges to any other entity in the class notice was "kind of like splitting hairs." The court then denied the modification to amend the class definition, finding that it was an improper attempt to take Northwest out of the case. Northwest now appeals.

## DISCUSSION

¶12 A circuit court's decision to grant or deny a motion for class certification is committed to the court's discretion. ***Harwood v. Wheaton Franciscan Servs., Inc.***, 2019 WI App 53, ¶41, 388 Wis. 2d 546, 933 N.W.2d 654. A circuit court properly exercises its discretion when it considers the facts of record and reasons its way to a rational, legally sound conclusion. ***Id.*** Stated differently, in order to properly exercise its discretion, a circuit court must apply the correct standard of law to the facts at hand. ***National Auto Truckstops, Inc. v. DOT***, 2003 WI 95, ¶13, 263 Wis. 2d 649, 665 N.W.2d 198.

¶13     Here, the circuit court's class certification decision is governed by the legal standards in WIS. STAT. § 803.08(11), which permit courts to certify class actions only "on the basis of a written decision setting forth all reasons why the action may be maintained and describing all evidence in support of the determination." Whether the certification decision here comports with this legal standard is a question of law that we review de novo, as is the circuit court's construction of the class definition language. *See, e.g.*, ***Williams v. General Elec. Cap. Auto Lease, Inc.***, 159 F.3d 266, 272 (7th Cir. 1998), citing ***In re American Cont'l Corp./Lincoln S&L Sec. Litig.***, 49 F.3d 541, 543 (9th Cir. 1995) (construction of class definition language, like construction of a statute or contract, is reviewed de novo).

¶14     There are no questions that Shannon's counsel paid Red Cedar for obtaining her medical records; that Red Cedar subsequently merged into Northwest and no longer exists; that Red Cedar's liabilities were assumed by Northwest, including any alleged overcharging for the medical records; and that Shannon did not obtain her medical records from Northwest or pay Northwest for those records. Nonetheless, the circuit court entered a written class certification order in which the approved class definition includes references to Northwest's conduct, rather than Red Cedar's conduct.

¶15     Based on these undisputed facts, Northwest contends the circuit court violated WIS. STAT. § 803.08(11) by approving a class definition that is unsupported by any evidence. We agree. The order is deficient under § 803.08(11) because it does not "describ[e]" any "evidence in support of [its] determination" that Northwest's conduct provides a basis for a class action. As Northwest correctly observes, "[i]t would be impossible to describe evidence in support of launching a class action against [Northwest] except as successor to [Red Cedar]." (Emphasis

omitted.) As explained, there is no evidence in the record to support a claim that Northwest itself charged any fees to anyone, only that Red Cedar did so while it was still in existence. Accordingly, the evidence requires amending the court's class certification order to substitute Red Cedar for Northwest in the class definition.

¶16 Shannon argued, and the circuit court agreed, that Red Cedar could not be identified in the class definition because it merged into Northwest and no longer exists—or conversely, that Northwest must be identified because of its successor liability. Again, we disagree. As Northwest correctly notes, successor liability under WIS. STAT. § 181.1106(3) does not change the identity of a past actor; it merely carries liability for the past actor's actions forward to that actor's successor—here, Northwest. Likewise, dissolution by merger under § 181.1106(1) does not mean that the merged entity never existed, just that it ceases to exist upon merger.

¶17 Our supreme court explained this very point in *Wisconsin Electric Power Co. v. Wisconsin Department of Taxation*, 251 Wis. 346, 29 N.W.2d 711 (1947). In that case, Wisconsin Electric assumed the obligations of another electric company by merger, then attempted to claim a tax deduction for the expenses incurred by that company. *Id.* at 350-51. The Department of Taxation disallowed the claimed deduction, and our supreme court affirmed that determination. *Id.* at 351-57. The court interpreted WIS. STAT. § 196.80, (1945-46), which pertained to the consolidation of public utilities and provided—similar to WIS. STAT. § 181.1106(3)—that the surviving utility was "deemed to have assumed all the liabilities and obligations of the merged corporation, and shall be liable in the same manner as if it had itself incurred such liabilities and obligations." *Wisconsin Elec. Power Co.*, 251 Wis. at 355-56 & n.1 (quoting § 196.80(1)(c) (1945-46)).

¶18 Wisconsin Electric argued that by paying the old utility's tax expense, it had "in substance … discharged its own obligation," and it therefore enjoyed the old utility's "privilege of deducting the tax." *Id.* at 355. The supreme court disagreed, holding that while it was true Wisconsin Electric succeeded the old utility's liabilities via the merger under WIS. STAT. § 196.80 (1945-46), "such a circumstance does not constitute the survivor as the corporation incurring the liabilities." *Wisconsin Elec. Power Co.*, 251 Wis. at 357. Wisconsin Electric "did not incur or pay them as taxes upon its business. It paid them as obligations of the old electric company, to which it succeeded." *Id.*

¶19 The same holds true here. If it was Red Cedar's conduct that damaged Shannon; Northwest may be liable for that conduct under successor liability, but that reality does not mean Northwest itself damaged Shannon. It only means that Northwest can be made to pay for what Red Cedar did before the merger. In fact, Northwest presented evidence in this circuit court—and Shannon does not dispute— that Northwest "never has charged any fees to any persons requesting copies of patients' itemized billing statements."

¶20 The circuit court therefore erred in refusing to correct the class definition so as to include only members who were damaged by Red Cedar's conduct. No alleged class members were damaged by Northwest's conduct. Further, Northwest's liability is not affected by the corrected definition.

¶21 Shannon fails to respond to the above rationale. She instead argues that Northwest should be judicially estopped from claiming that it should not be included as the party whose conduct is at issue in the class definition because that position is inconsistent with the position Northwest took in moving to dismiss

Red Cedar as a party to the lawsuit. Shannon essentially argues that Northwest is attempting to avoid liability by modifying the definition.

¶22    Northwest correctly replies that

> Shannon's reasoning suffers from the same error as the circuit court's. The question presented by this appeal is whether, notwithstanding the subsequent merger that makes [Northwest] the named defendant in this case, the class notice should correctly identify [Red Cedar] as the entity whose alleged conduct triggered Shannon's claim, thus accurately defining the scope of the certified class.

(Emphasis omitted.) Shannon offers no contrary argument. Again, Northwest did not charge Shannon anything, leaving the circuit court's order unsupported by any evidence. As a result, Shannon cannot represent a class of persons charged by Northwest. *See Foster v. Center Twp. of LaPorte Cnty.*, 798 F.2d 237, 244 (7th Cir. 1986) ("It is, of course, axiomatic that the named representative of a class must be a member of that class."); *see also Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962) ("Appellants … cannot represent a class of whom they are not a part."). Moreover, without a modification, there would be no class members, as the undisputed evidence shows that Northwest did not improperly charge any individuals for medical records during the relevant time period. Furthermore, if the notice defined the class as individuals who paid Northwest for medical records, that definition would mislead those who paid Red Cedar for medical records to believe they were not entitled to join the class action. Therefore, the class certification as ordered by the court cannot survive legal scrutiny.

¶23    Northwest also correctly notes that its position—i.e., that the class definition should correctly identify the actor whose conduct is at issue—is consistent with its earlier position in the circuit court. The doctrine of judicial

9

estoppel "precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position." *State v. Vice*, 2020 WI App 34, ¶45, 392 Wis. 2d 754, 946 N.W.2d 206 (citation omitted). The changed definition does not in any way affect Northwest's liability for Red Cedar's conduct. The changed definition clarifies that it is Red Cedar's conduct and the resulting alleged damage to Shannon and other class members that gives rise to Northwest's liability. Northwest does not have any liability for its own actions in charging Shannon and the other class members for health care medical records, as Northwest did not provide records or charge anyone for them at the relevant time.

¶24 Accordingly, we conclude that the class as certified incorrectly defines the members as those who were improperly charged for medical records by Northwest from 2013 to the filing of the lawsuit. The circuit court erred as a matter of law in failing to amend the class definition to state that the class consisted of individuals improperly charged for medical records by Red Cedar. Amending the definition will not affect Northwest's successor liability for Red Cedar's conduct, and Northwest is not judicially estopped from making this claim. Accordingly, we reverse the court's class certification order and we remand with directions to substitute Red Cedar for Northwest in the class definition.

*By the Court.*—Order reversed and cause remanded with directions.